## OLE HAUGO v. GREAT NORTHERN RAILWAY COMPANY.

(145 N. W. 1053.)

**Contributory negligence — as matter of law — facts and circumstances — no other inference — recovery.**

In order to constitute contributory negligence as a matter of law, the facts and circumstances must be such that no other inference can fairly and reasonably be drawn therefrom. Evidence examined, and *held* that plaintiff was guilty of such negligence in the case at bar that he cannot recover.

Opinion filed March 6, 1914.

Appeal from the District Court of Bottineau County, *Burr, J.* Reversed.

*Murphy & Duggan,* for appellant.

The plaintiff was guilty of such contributory negligence as will preclude a recovery by him, and the court erred in denying defendant's motion for a directed verdict. West v. Northern P. R. Co. 13 N. D.

Note.—On the question what is and what is not contributory negligence, see notes in 32 Am. Rep. 98 and 8 Am. St. Rep. 849. And for the general principles of law applicable to contributory negligence, see note in 55 Am. Dec. 666.

221, 100 N. W. 254; Sherlock v. Minneapolis, St. P. & S. Ste. M. R. Co. 24 N. D. 40, 138 N. W. 976; Pendroy v. Great Northern R. Co. 17 N. D. 445, 117 N. W. 531; Hope v. Great Northern R. Co. 19 N. D. 438, 122 N. W. 997.

Where physical evidence conclusively establishes that if plaintiff *had looked for* the train after he had passed the obstruction he could have seen it, the plaintiff cannot make an issue of fact by stating that he *looked* but did *not see* the train. He *could* have seen it. Powers v. Iowa C. R. Co. — Iowa, —, 136 N. W. 1049; Bloomfield v. Burlington & W. R. Co. 74 Iowa, 607, 38 N. W. 431; St. Louis, I. M. & S. R. Co. v. Coleman, 97 Ark. 438, 135 S. W. 338; Wilson v. Illinois C. R. Co. 150 Iowa, 33, 34 L.R.A.(N.S.) 687, 129 N. W. 340; Gehring v. Atlantic City R. Co. 75 N. J. L. 490, 14 L.R.A.(N.S.) 312, 68 Atl. 61; Schwartz v. Mineral Range R. Co. 153 Mich. 40, 17 L.R.A.(N.S.) 1253, 116 N. W. 540; Knox v. Philadelphia & R. R. Co. 202 Pa. 504, 52 Atl. 90; Wickham v. Chicago & N. W. R. Co. 95 Wis. 23, 69 N. W. 982, 1 Am. Neg. Rep. 198; Schmidt v. Missouri P. R. Co. 191 Mo. 215, 3 L.R.A.(N.S.) 196, 90 S. W. 136; Davis v. Chicago, R. I. & P. R. Co. 16 L.R.A.(N.S.) 424, 88 C. C. A. 488, 159 Fed. 10; Cowen v. Dietrick, 101 Md. 46, 60 Atl. 282, 4 Ann. Cas. 292; White v. Minneapolis, St. P. & S. Ste. M. R. Co. 147 Wis. 141, 133 N. W. 148; Marshall v. Green Bay & W. R. Co. 125 Wis. 96, 103 N. W. 249; Pittsburg, C. C. & St. L. R. Co. v. West, 34 Ind. App. 95, 69 N. E. 1017; Blumenthal v. Boston & M. R. Co. 97 Me. 255, 54 Atl. 747; Peters v. Southern R. Co. 135 Ala. 533, 33 So. 332; Carlson v. Chicago & N. W. R. Co. 96 Minn. 504, 4 L.R.A.(N.S.) 349, 113 Am. St. Rep. 655, 105 N. W. 555; Kemp v. Northern P. R. Co. 89 Minn. 139, 94 N. W. 439; Kelsay v. Missouri P. R. Co. 129 Mo. 362, 30 S. W. 339; Lane v. Missouri P. R. Co. 132 Mo. 4, 33 S. W. 645, 1128; Waggoner v. Chicago, B. & Q. R. Co. 152 Mo. App. 173, 133 S. W. 68; Meehan v. Great Northern R. Co. 43 Mont. 72, 114 Pac. 781, 3 N. C. C. A. 556.

The master is not under legal obligation to supervise the details of the work, and is not bound at his peril to inspect tools, etc., defects in which would be just as apparent to the ordinary workman, as they would to him. Koschman v. Ash, 98 Minn. 312, 116 Am. St. Rep. 373, 108 N. W. 514, and cases cited; Brown v. Swift & Co. 91 Neb. 532, 136 N.

W. 726; Vanderpool v. Partridge, 79 Neb. 165, 15 L.R.A.(N.S.) 668, 112 N. W. 318; Wachsmuth v. Shaw Electric Crane Co. 118 Mich. 275, 76 N. W. 497; Longpre v. Big Blackfoot Mill. Co. 38 Mont. 99, 99 Pac. 131; Lukovski v. Michigan C. R. Co. 164 Mich. 361, 129 N. W. 707; Olson v. Doherty Lumber Co. 102 Wis. 264, 78 N. W. 572; Hathaway v. Illinois C. R. Co. 92 Iowa, 337, 60 N. W. 651.

The defendant was not negligent. Lake Shore & M. S. R. Co. v. Barnes, 166 Ind. 7, 3 L.R.A.(N.S.) 781, 76 N. E. 629; Sutton v. Chicago, St. P. M. & O. R. Co. 98 Wis. 157, 73 N. W. 993; Missouri P. R. Co. v. Hansen, 48 Neb. 232, 66 N. W. 1105; Newhard v. Pennsylvania R. Co. 153 Pa. 417, 19 L.R.A. 563, 26 Atl. 105; Knox v. Philadelphia & R. R. Co. 202 Pa. 504, 52 Atl. 90; Atchison, T. & S. F. R. Co. v. Judah, 65 Kan. 474, 70 Pac. 346, 12 Am. Neg. Rep. 601; Reading & C. R. Co. v. Ritchie, 102 Pa. 425; Missouri P. R. Co. v. Moffatt, 56 Kan. 667, 44 Pac. 607, 11 Am. Neg. Cas. 554; Goodwin v. Chicago, R. I. & P. R. Co. 75 Mo. 73; Miller v. Chicago & N. W. R. Co. 21 S. D. 242, 111 N. W. 553; Galveston, H. & S. A. R. Co. v. Wink, — Tex. Civ. App. —, 31 S. W. 326; Muster v. Chicago, M. & St. P. R. Co. 61 Wis. 325, 50 Am. Rep. 141, 21 N. W. 223; Tobias v. Michigan C. R. Co. 103 Mich. 330, 61 N. W. 514; New York, C. & St. L. R. Co. v. Kistler, 66 Ohio St. 326, 64 N. E. 130, 12 Am. Neg. Rep. 343; Atchison, T. & S. F. R. Co. v. Hague, 54 Kan. 284, 45 Am. St. Rep. 278, 38 Pac. 257; Childs v. Pennsylvania R. Co. 150 Pa. 73, 24 Atl. 341; Partlow v. Illinois C. R. Co. 150 Ill. 321, 37 N. E. 663, 51 Ill. App. 597; Pepper v. Southern P. R. Co. 105 Cal. 389, 38 Pac. 974, 11 Am. Neg. Cas. 200.

It is held that failure to hear signals is not contradictory of clear evidence that the signals were given. Payne v. Chicago & N. W. R. Co. 108 Iowa, 188, 78 N. W. 813; Anspach v. Philadelphia & R. R. Co. 225 Pa. 528, 28 L.R.A.(N.S.) 382, 72 Atl. 373; Newhard v. Pennsylvania R. Co. 153 Pa. 417, 19 L.R.A. 563, 26 Atl. 105; Keiser v. Lehigh Valley R. Co. 212 Pa. 409, 108 Am. St. Rep. 872, 61 Atl. 903; Knox v. Philadelphia & R. R. Co. 202 Pa. 504, 52 Atl. 90; Wickham v. Chicago & N. W. R. Co. 95 Wis. 23, 69 N. W. 982; Bohan v. Milwaukee, L. S. & W. R. Co. 61 Wis. 391, 21 N. W. 241; Howe v. Northern R. Co. 78 N. J. L. 683, 76 Atl. 979; Stuart v. Nashville, C. & St. L. R. Co. 146

Ky. 127, 142 S. W. 232; St. Louis, I. M. & S. R. Co. v. Coleman, 97 Ark. 438, 135 S. W. 338; Baltimore & O. R. Co. v. State, 96 Md. 67, 53 Atl. 672; Cathcart v. Hannibal & St. J. R. Co. 19 Mo. App. 113; Sutton v. Chicago, St. P. M. & O. R. Co. 98 Wis. 157, 73 N. W. 993; Evison v. Chicago, St. P. M. & O. R. Co. 45 Minn. 370, 11 L.R.A. 434, 48 N. W. 6; Powers v. Iowa C. R. Co. — Iowa, —, 136 N. W. 1049; Bloomfield v. Burlington & W. R. Co. 74 Iowa, 607, 38 N. W. 431.

In any event, a failure to give this signal could not in anywise have caused the accident. Mankey v. Chicago, M. & St. P. R. Co. 14 S. D. 468, 85 N. W. 1013.

It was the duty of plaintiff to look and listen, before approaching the main track to a point of danger, and if by looking and listening he could have known the train was approaching, *then* it was negligence for him to drive upon the track without doing so, and he cannot recover. Hope v. Great Northern R. Co. 19 N. D. 438, 122 N. W. 997; Pendroy v. Great Northern R. Co. 17 N. D. 433, 117 N. W. 531; West v. Northern P. R. Co. 13 N. D. 221, 100 N. W. 254; Sherlock v. Minneapolis, St. P. & S. Ste. M. R. Co. 24 N. D. 40, 138 N. W. 976; Payne v. Chicago & N. W. R. Co. 108 Iowa, 188, 78 N. W. 813, and cases cited.

The train has the right of way, and the train men may presume that travelers are exercising care and prudence, when they have no notice that travelers are careless or ignorant of the approach of the train. Horan v. Boston & M. R. Co. 106 C. C. A. 535, 184 Fed. 453; Wasmer v. Missouri P. R. Co. 166 Mo. App. 215, 148 S. W. 155; St. Louis & S. F. R. Co. v. Summers, 97 C. C. A. 328, 173 Fed. 358; Morton v. Southern R. Co. 112 Va. 398, 71 S. E. 561.

*Weeks & Moum,* for respondents.

Where the evidence produced presents an issue of fact, which if determined in plaintiff's favor would entitle him to recover, the case should be submitted to the jury. Where there is some evidence, although *slight,* the case should be so submitted. The judge has *nothing* to do with the *weight* of the testimony. 31 Cyc. 1532; Bickery v. Burton, 6 N. D. 245, 69 N. W. 193; McRea v. Hillsboro Nat. Bank, 6 N. D. 353, 70 N. W. 813; Pirie v. Gillitt, 2 N. D. 255, 50 N. W. 710; Slattery v. Donnelly, 1 N. D. 264, 47 N. W. 375; Cameron v. Great Northern R. Co. 8 N. D. 125, 77 N. W. 1016, 5 Am. Neg. Rep.

454; Pewonka v. Stewart, 13 N. D. 117, 99 N. W. 1080, 16 Am. Neg. Rep. 540; Houghton Imp. Co. v. Vavrowski, 19 N. D. 594, 125 N. W. 1024.

Where there was evidence tending to support the complaint, and it was of such character that reasonable, honest men might draw different conclusions, it was sufficient, and should have been submitted to the jury. Cameron v. Great Northern R. Co. 8 N. D. 125, 77 N. W. 1016, 5 Am. Neg. Rep. 454; Hoye v. Chicago & N. W. R. Co. 62 Wis. 666, 23 N. W. 14; Detroit & M. R. Co. v. Van Steinburg, 17 Mich. 99; Sioux City & P. R. Co. v. Stout, 17 Wall. 657, 21 L. ed. 745; Pirie v. Gillitt, 2 N. D. 255, 50 N. W. 710; Williams v. Northern P. R. Co. 3 Dak. 168, 14 N. W. 97; Franz Falk Brewing Co. v. Mielenz Bros. 5 Dak. 136, 37 N. W. 728; Finney v. Northern P. R. Co. 3 Dak. 270, 16 N. W. 500; Knight v. Towles, 6 S. D. 575, 62 N. W. 964; Mattoon v. Fremont, E. & M. Valley R. Co. 6 S. D. 196, 60 N. W. 740; Chicago City R. Co. v. Nelson, 215 Ill. 436, 74 N. E. 458; State v. Johnson, 14 N. D. 288, 103 N. W. 565; Hall v. Northern P. R. Co. 16 N. D. 60, 111 N. W. 609, 14 Ann. Cas. 960; 29 Cyc. 631; Solberg v. Schlosser, 20 N. D. 307, 30 L.R.A.(N.S.) 1111, 127 N. W. 91; Calloway v. Agar Packing Co. 129 Iowa, 1, 104 N. W. 721; Arenschield v. Chicago, R. I. & P. R. Co. 128 Iowa, 677, 105 N. W. 200; O'Neill v. Chicago, R. I. & P. R. Co. 62 Neb. 358, 60 L.R.A. 443, 86 N. W. 1098; Kunkel v. Minneapolis, St. P. & S. Ste. M. R. Co. 18 N. D. 367, 121 N. W. 830; Johnson v. Southern P. R. Co. 154 Cal. 285, 97 Pac. 520; Dieckmann v. Chicago & N. W. R. Co. 145 Iowa, 250, 31 L.R.A.(N.S.) 338, 139 Am. St. Rep. 420, 121 N. W. 676.

One who is required to act suddenly and in the face of imminent danger is not required to use the same degree of care as though he had time for deliberation and the full exercise of his judgment and reasoning faculties. 28 Cyc. 521, and cases cited. Coulter v. Great Northern R. Co. 5 N. D. 568, 67 N. W. 1046; New York, S. & W. R. Co. v. Moore, 45 C. C. A. 21, 105 Fed. 725; Dougherty v. Chicago, M. & St. P. R. Co. 20 S. D. 46, 104 N. W. 672; Guggenheim v. Lake Shore & M. S. R. Co. 66 Mich. 150, 33 N. W. 161; Union P. R. Co. v. Ruzicka, 65 Neb. 621, 91 N. W. 543; 7 Am. & Eng. Enc. Law, 427–436; 33 Cyc. 901.

BURKE, J.   Plaintiff was injured in a collision with defendant's train, at a grade crossing within the city limits of Bottineau, North Dakota. The road upon which he had traveled to reach the city runs due south, and the street upon which he was traveling at the time of the injury coincides with the said section line.   The defendant's train approached from a direction which may be designated as northwest by north.   Thus plaintiff was driving into the town from due north and the train was approaching the town from a direction half way between north and northwest.   The depot at which the train would stop was situated about 400 feet to the south and beyond the crossing aforesaid.   There was also a side track parallel with, and 50 feet north of, the main track at the place where the street intersected the right of way.   From the testimony and from a photograph it is apparent that the wagon road makes a slight turn at the crossing, but does not cross the track at right angles. From careful calculation we have reached the conclusion that the distance between the centers of the main and side tracks at the crossing is in the neighborhood of 75 feet.   At the time of the accident there was a string of box cars standing upon the side track immediately west of the crossing, which would tend to obstruct plaintiff's view of the main track as he approached from the north.   The accident happened upon the 21st day of December, 1910, about 1:30 P. M., and the testimony shows that the weather was foggy and thick, but not so dense but that a train might be seen for at least a quarter of a mile.   The train consisted of seven freight cars and an engine, and plaintiff was driving a team of horses drawing a sleigh upon which he had about a cord of wood. Plaintiff drove over the main track, ahead of the train, but the rear end of his load was struck by the engine and upset.   He claimed injury to the sled and harness and to his person.   The jury awarded a verdict in the sum of $450.   Defendant and appellant insists that plaintiff was guilty of contributory negligence which precludes his recovery.   The question is decisive of the case, and will be the only one considered.

 (1)   The law relative to contributory negligence in crossing accidents is well settled in this country at large and in this state.   The authorities are agreed that in order to constitute contributory negligence as to matter of law, the facts and circumstances must be such that no other inference can fairly and reasonably be drawn therefrom.   See valuable Case Note at page 963, vol. 11 L.R.A.(N.S.) where the authorities are col-

27 N. D.—18.

lected and reviewed. 29 Cyc. 631, and cases cited. Bostwick v. Minneapolis & P. R. Co. 2 N. D. 440, 51 N. W. 781; West v. Northern P. R. Co. 13 N. D. 221, 100 N. W. 254; Carr v. Minneapolis, St. P. & S. Ste. M. R. Co. 16 N. D. 217, 112 N. W. 972; Pendroy v. Great Northern R. Co. 17 N. D. 433, 117 N. W. 531; Kunkel v. Minneapolis, St. P. & S. Ste. M. R. Co. 18 N. D. 367, 121 N. W. 830; Hope v. Great Northern R. Co. 19 N. D. 438, 122 N. W. 997; Hollinshead v. Minneapolis, St. P. & S. Ste. M. R. Co. 20 N. D. 642, 127 N. W. 993; Sherlock v. Minneapolis, St. P. & S. Ste. M. R. Co. 24 N. D. 40, 138 N. W. 976. In the West Case it is said: "The ordinary precaution required of one approaching a railroad crossing, when he has no knowledge of the close proximity of the train, is that he look and listen and make a diligent use of all his faculties to inform himself and avoid collision. Where a view of the track in either direction is obstructed before reaching the point of danger, extra precaution is required to ascertain danger through the sense of hearing. When the exercise of these ordinary precautions would have avoided the accident, negligence is conclusively established." In the Pendroy Case it is said: "A person about to cross a track must bear in mind the dangers attendant upon crossing, and vigilantly use his senses of sight and hearing in the endeavor to avoid injury." In the same case it is said: "Traveler . . . is rigidly required to do all that care and prudence would dictate to avoid injury, and the greater the danger, the greater the care that must be exercised to avoid it. And where because of physical infirmities, darkness, snow, fog, the inclemency of the weather, buildings, or other obstructions and hindrances, it is more than usually difficult to see or hear, greater precaution must be taken to avoid injury than would otherwise be necessary; and under such circumstances there can be no excuse for a failure to adopt such reasonable precautions as would probably have prevented the injury," quoting from 7 Am. & Eng. Enc. Law, 2d ed. pages 427–436. Nothing remains then but to apply the well-settled law to the facts in the case at hand. As already stated, plaintiff approached the crossing from due north, while the train approached from a direction designated as north by northwest, thus approaching from nearly the rear of plaintiff's rig. Plaintiff had used this crossing for eleven years every time that he came to town, sometimes two or three times a week. As he approached the crossing, the land between him and the main track

was level, and there was nothing to obstruct his view excepting the box cars which stood upon the side track. He had a cap pulled down over his ears to protect himself from the cold. He had no bells upon his team, and the sled made no noise. He testifies that his sight and hearing were good, and that the horses were walking when he was crossing the track, but had hurried up a little, and were trotting before the engine struck the sled. The testimony places the speed of the train at between 8 and 20 miles per hour, the engineer giving the lowest speed, saying that he intended to stop at the depot. All of plaintiff's witnesses excepting himself testified that the speed of the train was about 12 miles an hour. Plaintiff at the time of the accident was therefore traveling at a speed approximately one third of the speed of the train, while prior to the collision the train was probably going from four to five times as fast as the team. Plaintiff testifies that he looked for the train before he got to the tracks, and that after he got to the track the cars prevented him from seeing the train, and that he saw quite a distance up the track. He further testifies that he believed the train was about 2 rods from him when he first saw it. Again he testifies: "I didn't look for trains from the northwest until I came over close. I didn't get a chance to look after that train. I didn't get a sight of any train until after I crossed the side track. That wasn't the first time I looked to see if the train was coming. I looked when I was further north on the road. I can't say how far. The first time I looked after I had passed the side track was when my horses were about on the second track after I got past the cars on the side track, I might have been able to see for a mile or so up the main track if it had been clear weather. The track is straight, and I believe you could see 7 or 8 rods anyway. When I first came to the side track, the team was walking a common walk they use on the road. Before I got to cross the track the team started to trot. When we cross the track I hurry them up to go faster across the track. I am afraid crossing the track. The horses were walking when I first saw the train, and started to hurry up." And again he says: "After I got by the cars so I could see, I commenced looking. I believe I did commence looking before the horses got on the second track. I can't say how close they were to the first track when I first looked. The horses were not far enough away from the second track when I first saw the train so that I could have turned off if I wanted to." And

again he says: "I mean the horses were actually on the track before I saw the train, I can't say anything different."

An analysis of the above testimony shows that plaintiff drove over the side track containing the box cars, at a speed between 3 and 4 miles per hour, and that he could see the train approach upon the main track had he looked. At that instant he was about 65 feet from the place where he was struck by the train. If he made those 65 feet at the rate of 5 miles per hour, and the train was approaching at a speed of from 15 to 20 miles per hour. The train must have been between 260 and 325 feet from the crossing when plaintiff had his first opportunity to see it. At that time his horses were about 40 feet from the main track, and it would be easily possible for him to stop or turn aside and thus avoid the collision. It clearly was his duty to look up the track immediately after passing the box cars upon the side track, and a failure to look would be such negligence upon his part as would preclude his recovery. From the evidence it seems plain that he neglected to look until his horses were nearly, if not quite, in front of the approaching train and the engine was within two rods of him. This is the plain import of plaintiff's own testimony, and we do not believe reasonable minds should differ in reaching the conclusion that this failure to look was the proximate cause of his injury. If, however, plaintiff takes the other horn of the dilemma, and insists that he did look immediately after passing the cars upon the side track, then reasonable minds must agree that he saw the train and decided that he could pass safely in front of it. In either case, his own negligence caused, or at least contributed to, the collision and consequential injury. When both parties are negligent it is not possible to make an equitable distribution of the damages, and neither party can recover. It was thus the duty of the trial court to direct a verdict for the defendant at the close of the case, or, failing in this, to grant judgment notwithstanding the verdict, when such motion was made. The judgment of the trial court is reversed, and judgment ordered entered for defendant notwithstanding the verdict.